1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT
9              FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11   UNITED STATES OF AMERICA,,              No.  2:19-cv-000547-DAD-EPG

12                 Plaintiff,

13         v.                                ORDER GRANTING MOTION TO FILE
                                             AMICUS BRIEF AND PERMITTING THE
14   STATE WATER RESOURCES                   FILING OF A RESPONSE
     CONTROL BOARD & STATE WATER
15   RESOURCES CONTROL BOARD                 (Doc. No. 41)
     CHAIR E. JOAQUIN ESOUIVEL, in his
16   official capacity,                      **TWENTY-ONE DAY DEADLINE**

17                 Defendants.

18

19         On March 28, 2019, Plaintiff United States of America, at the request of the United States

20   Department of the Interior through its Bureau of Reclamation ("Reclamation"), filed two similar

21   lawsuits, one in Sacramento County Superior Court, the other in this court, concerning

22   amendments adopted by Defendant State Water Resources Control Board ("State Water Board"

23   or "the Board") to the Water Quality Control Plan for the San Francisco Bay/Sacramento-San

24   Joaquin Delta Estuary ("Bay-Delta Plan Amendments," "Amendments," or "Amended Plan").

25   (See Doc. Nos. 1; 18-6.)

26         For purposes of the instant order, the undersigned adopts the previously assigned district

27   judge's summary of the factual background as follows:

28   /////

                                          1

The history of regulation and litigation of issues related to the San Francisco Bay/Sacramento-San Joaquin Delta Estuary ("Bay-Delta") is long, wide, and deep. Without question, the Bay-Delta itself is a critically important natural resource that is both the hub of California's water supply and a vital estuary and wetland supporting numerous beneficial uses. Central to the present dispute is the fact that the State Water Board holds authority under California's Porter-Cologne Water Quality Control Act, Cal. Water Code § 13000, et seq., to adopt water quality control plans to protect the waters of California. The Board adopted its original Water Quality Control Plan for the San Francisco Bay/Sacramento-San Joaquin Delta Estuary ("Bay-Delta Plan") in 1978, and amended that plan in 1991, 1995, and 2006. The most recent effort to amend the Bay-Delta Plan began in 2009, and, over a nine-year period, the Board considered various amendments and prepared environmental documentation analyzing the potential environmental impacts of the Bay Delta Plan Amendments under [the California Environmental Quality Act ("CEQA")].

The Board held numerous publicly-noticed meetings and reviewed thousands of comments regarding the proposed Amendments and related drafts of the Substitute Environmental Document ("SED") prepared in accordance with CEQA. On December 12, 2018, the Board adopted the SED and Amended Plan.

In general, the Amendments are designed to accomplish several goals relevant to this case. First, they increase the flows required to be left in the three main salmon-bearing tributaries to the San Joaquin River (the Stanislaus, Tuolumne, and Merced Rivers) during critical months (February through June). These flow increases are designed to improve spawning, rearing, and migratory habitat conditions in the Lower San Joaquin River. The Board plans to implement the flow objectives "adaptively," within broad constraints, to adjust timing and flow patterns to better balance multiple beneficial uses when scientific information indicates doing so is appropriate.

Second, the Amendments provide that the Board will include minimum reservoir carryover storage targets or other requirements to ensure that providing the flows to meet the objectives will not have adverse temperature or other impacts on fish and wildlife.

Third, the Amendments revise southern Delta salinity objectives for agriculture by adjusting the salinity requirements/restrictions to a slightly higher level, ostensibly to reflect updated scientific knowledge of southern Delta salt levels that reasonably protect agriculture. More specifically, the Amended Plan revises the salinity objective for agricultural beneficial uses by increasing the April through August salinity objective from a mean daily electrical conductivity ("EC") of 0.7 deciSiemens per meter ("dS/m") to 1.0 dS/m, resulting in a 1.0 dS/m salinity objective for the four compliance locations year-round.

Reclamation's existing [state-issued] water rights [permits] to operate the federal Central Valley Project ("CVP"), including its permits to operate the New Melones Project, a component of the

2

> CVP, currently require Reclamation to meet the [pre-]existing salinity objective of 0.7 dS/m at these locations.  The Amended Plan proposes to implement the [revised] salinity objective for the interior southern Delta by requiring Reclamation to continue operating to meet the 0.7 dS/m salinity limit at Vernalis as required by its existing water rights.  The Amended Plan also proposes to implement the salinity objective through increased inflows provided by application of flow-based (as opposed to salinity-based) objectives for the Lower San Joaquin River.

(Doc. No. 28 at 2-4) (citations omitted) (emphasis in original).  In sum, the Amended plan relaxes the salinity limits in the southern Delta, but nonetheless appears to require Reclamation to operate as though the salinity limits have not been relaxed.

The First Amended Complaint ("FAC") in this (the federal) action raised three causes of action under CEQA, California Public Resources Code §§ 21000 et seq.,–(1) failure to provide an accurate, stable, and finite project description; (2) improper compression of impacts and mitigation; and (3) failure to adequately evaluate impacts–along with (4) a cause of action based upon the federal constitutional intergovernmental immunity ("IGI") doctrine.  (Doc. No. 14.)  The United States' state court complaint alleges the same three causes of action under CEQA but omits the IGI claim.  (Doc. No. 18-6.)

Because the IGI claim is central to the instant motion, the court summarizes it here.  The IGI Doctrine is grounded in the Supremacy Clause of the United States Constitution*, see Boeing Co. v. Movassaghi*, 768 F.3d 832, 839 (9th Cir. 2014), and generally prohibits any "state or local law that directly regulates the conduct of the federal government or discriminates against it . . . , even if it is no more restrictive than federal law."  *United States v. City of Arcata*, 629 F.3d 986, 991-92 (9th Cir. 2010).

Prior to the Plan Amendment, the Bay-Delta Plan imposed a salinity objective at Vernalis of 1.0 dS/m September through March and 0.7 dS/m April through August.  (See FAC ¶ 46.)  Currently, Reclamation's water rights for the New Melones Project are conditioned, through Water Right Decision 1641 ("D-1641"), on meeting those pre-existing requirements (1.0 dS/m, September through March, and 0.7 dS/m April through August) on the San Joaquin River as measured at Vernalis.  (FAC ¶ 48.)  These standards are met through releases of water from New Melones and related reservoirs when necessary to create dilution flows.  *Id.*

The Amended Plan recognizes that the existing salinity objective is "lower than what is needed to reasonably protect agricultural beneficial uses." (FAC ¶ 44 (citing State Water Board Resolution No 2018-059, ¶ 6)). "As a result, the Amended Plan makes the standard less stringent, imposing a year round 1.0 dS/m objective." (*Id.* at ¶ 45.)

The FAC alleges that the Board's program of implementation for the new standards assigns solely to Reclamation the burden of providing dilution flows to meet a lower salinity level than 1.0 dS/m—a level that the Board otherwise finds protective of Southern Delta agricultural uses. (*Id.* at ¶ 53.) The FAC further alleges that "[i]n the SED, the Board further prejudices any future water right implementation process by explaining that Reclamation would be required to meet the 0.7 dS/m at Vernalis (despite the actual standard being 1.0 dS/m) to provide 'assimilative capacity' below Vernalis so that other water users and dischargers may degrade the salinity level below Vernalis." (*Id.* at ¶ 54.) In sum, the United States alleges that "because the Board has now determined that a standard of 1.0 dS/m is sufficiently protective of agricultural beneficial uses, there is no rational basis for the Board to require Reclamation to meet a more stringent standard to prevent unacceptable water quality at Vernalis." (*Id.* at ¶ 90.)

On July 3, 2019, the State Water Board moved to dismiss the entire lawsuit, citing four separate abstention doctrines: *Brillhart/Wilton*, *Burford*, *Pullman*, and *Colorado River*. (See Doc. No. 17.) The motion also argued that the IGI claim is unripe and fails as a matter of law on various grounds. (*Id.*) After the court ordered a round of supplemental briefing (*see* Doc. No. 25), the motion to dismiss became ripe for decision in mid-November 2019. (Docs. No. 26, 27.) On December 2, 2019, the previously assigned district judge stayed adjudication of the state law (CEQA) claims, pursuant to the abstention doctrine set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). (*See* Doc. No. 28 at 22–28, 35.) The court declined to reach the merits of the Board's ripeness challenge to the IGI claim, however, finding that the issues were not sufficiently addressed and explored in the papers. (*Id.* at 28–33.) Thereafter, the parties stipulated to a briefing schedule to supplement their arguments on the ripeness issue (Doc. No. 30), and then stipulated to an extension of that schedule (Doc. No. 39).

4

On March 6, 2020, approximately three weeks before the supplemental briefing period was to close, the San Joaquin Tributaries Authority ("Applicant") requested leave to file an *amicus curiae* brief.  (Doc. No. 41.)  The court has reviewed that request, the proposed *amicus* brief (Doc. No. 41-6), and defendants' opposition to the request (Doc. No. 43), as well as Applicant's reply (Doc. No. 43), in light of the entire record.

The Federal Rules of Civil Procedure do not set forth the manner and circumstances in which an *amicus* brief may be filed in district courts.  District courts therefore rely on Federal Rule of Appellate Procedure 29 ("Rule 29") in addressing such requests.  *See Earth Island Inst. v. Nash*, No. 1:19-cv-01420 DAD SAB, 2019 WL 6790682, at *1 (E.D. Cal. Dec. 12, 2019).  A "district court has broad discretion to appoint *amici curiae*."  *Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982), overruled on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995).  "The touchstone is whether the amicus is 'helpful.'"  *Earth Island*, 2019 WL 6790682 at * 1 (citing Hoptowit, 682 F.2d at 1260).

As a threshold matter, the State Board suggests Applicant's request is untimely because this case has been ongoing for some time and the initial motion to dismiss was fully briefed more than six months ago.  (Doc. No. 43 at 1.)  The court does not agree.  Rule 29 states that an *amicus curiae* must file its motion and brief "no later than 7 days after the principal brief of the party being supported is filed."  The brief Applicants seek to support here is plaintiff's supplemental brief, filed February 28, 2020.  (See Doc. No. 40.)  The application was timely filed one week later.  (Doc. No. 41.)

The critical question, therefore, is whether the brief is "helpful" to the court's inquiry.  A key issue remaining to be decided in this case is whether the IGI claim is ripe under the controlling standard set forth in *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998), which requires a reviewing court to consider:  (1) whether delayed review would cause hardship to the plaintiff, (2) whether judicial review would inappropriately interfere with further administrative action, and (3) whether the court would benefit from additional factual development of the issues.

/////

1     Here, the Board has taken the position that the IGI claim is not ripe because "the [B]oard

2 has not yet assigned responsibility for meeting the revised salinity objective." (Doc. No. 17-1 at

3 22.)  The Board maintains that the Bay-Delta Plan Amendments are not self-implementing (*see*

4 *id.* at 3), because the Board will implement the Amended Plan through future water rights and

5 water quality actions.  (*Id*. at 22.)  In support of this proposition, the Board cites the Amended

6 Plan itself, which states that "[b]y 2022, the State Water Board will fully implement the February

7 through June [Lower San Joaquin River] flow objectives through water right actions or water

8 quality actions."  (Doc. 18-3 at 24.)

9     As the previously assigned district judge noted, "what is somewhat unclear from the face

10 of the Amended Plan is whether, assuming the Amended Plan's CEQA document survives

11 judicial review, the Board would ever implement the objectives in the Amended Plan before all

12 respective water rights and/or water quality actions are completed."  (Doc. No. 28 at 30.)  Also as

13 mentioned, the record suggests that "existing water rights holders, of which [the United States] is

14 one, might be left 'holding the bag' with respect to some aspects of implementation of the

15 Amended Plan simply by virtue of their existing water right permit, at least until other water users

16 are assigned a portion of the respective responsibility for meeting the objectives of the Amended

17 Plan."  (*Id*. at 31.)

18     Although the court is not yet in the position to resolve definitively the ripeness issue, it

19 believes the proposed *amicus* brief will be helpful in several respects.  First, the brief calls the

20 court's attention to ways in which a ruling in this case could impact ongoing challenges in state

21 court to the Board's implementation of the Amended Plan.  (See Doc. No. 41-6 at 3.)  This kind

22 of information may help the court refine the scope of its ripeness ruling.  Second, the proposed

23 *amicus* brief argues that a fundamental premise of the Board's ripeness argument—that it can

24 later spread the obligation of complying with the Vernalis salinity objectives across multiple

25 parties (*see* Doc. No. 45 at 3)—is incorrect.  (*Id*. at 3–4, 7–8.)  For obvious reasons (i.e., because

26 it would benefit the United States to have this burden shared by others), the United States has not

27 taken this position.  Finally, the *amicus* brief takes a slightly different position than the United

28 States on an issue arguably going to *Ohio Forestry's* "hardship" prong, namely, whether the

1   United States has been unlawfully singled out by the requirement that it meet the more stringent

2   Vernalis salinity objective.  (Compare Doc. 40 at 8 (United States arguing it has been singled out

3   and that this is an "adverse effect of a strictly legal kind") with Doc. 41-6 (proposed *amicus* brief

4   making the more nuanced argument that while it is appropriate and nondiscriminatory for the

5   Board to assign sole or primary responsibility for meeting the salinity objective at Vernalis, the

6   Board's requirement that Reclamation meet a standard more stringent than that actually required

7   by the objective is discriminatory)).  The court believes it is likely important to at least consider

8   this divergent position.

9          Accordingly, the court believes the proposed *amicus* brief will be helpful.  Therefore, it

10   will be considered and defendants will be afforded an opportunity to respond to it.

11                                              **CONCLUSION**

12         For the reasons set forth above:

13         (1)  Applicants' request to file (Doc. No. 41) its proposed *amicus* brief (Doc. No. 41-6) is

14         GRANTED;

15         (2)  Applicants are directed to file the proposed *amicus* brief as a separate docket entry;

16         (3)  Defendants shall have twenty-one (21) days to file a response to that brief of equal or

17         lesser length; and

18         (4)  Thereafter, unless the court independently contacts the parties to re-set oral argument,

19         the matter will be deemed submitted for decision on the papers pursuant to Local Rule

20         230(g).

21   IT IS SO ORDERED.

22      Dated:   **April 22, 2020**                              _____

23                                                               UNITED STATES DISTRICT JUDGE

24

25

26

27

28

                                                    7